Next case on for argument is N. Ray Madoff, excuse me, Madoff Investments. May I proceed? Please. Thank you, Your Honor. Lance Gotthoffer for Plaintiff Appellants. I know that several of you were on the panel that decided the Goldman case. So let me get right to the crux of things. What makes this case different from Goldman? The answer is, in this case, Bernie Madoff has provided evidence that shows or answers the question as to whether plaintiffs are asserting a bona fide control person claim or whether they are asserting a disguised fraudulent conveyance claim. By deposition and declaration, Madoff testified that Mr. Pickower created his fraud. After putting Madoff under enormous financial pressure — Did he ever explain what he meant by created the fraud? Not in the record before us. And so what, as you were about to say, what Mr. Madoff does say, whether or not this is what he meant by creating the fraud, what he does say is that Pickower and other people put him under financial pressure by various kinds of arguable misconduct, failing to comply with agreements and so on, and then he, Madoff, made what he characterized as the mistake of first getting — trying to make this up by doing business with hedge funds, and then when he couldn't meet the hedge fund's expectations, falsifying records. Is there any place in the deposition where Madoff says Pickower told him to do that? There's not anything in the record that says precisely that. How about approximately? Tell me the best approximation of that, that Madoff said in the deposition. That Pickower had the greatest responsibility for the fraud of anyone other than Madoff himself, and that Madoff believed that the best thing he could do was to try to get Pickower and the others who were complicit in the fraud to return the money to the investors. That doesn't sound very — that doesn't sound like being a control person to me. Why would you say that — do you have cases in which someone was held to be a control person, that is to say someone who had control over the kinds of misrepresentations that were made based on anything like such vague assertions by the person who also acknowledges that he personally is the one who actually made the key decisions? Your Honor, in Goldman, the Court said that there was no evidence or no showing that Pickower created or — no, created the process or directed the process of the fraud, a central feature of which was to disseminate false information to investors. No evidence that Pickower created that or directed it, and I would respectfully submit here — But other than Mr. Madoff saying he's the one who's really responsible for this and he created the fraud in very general terms, there is still no evidence of that in any concrete way. There's still no statement by Madoff, is there, that Mr. Pickower said, Bernie, how about you do this? Or I think a good idea would be to falsify all these records and pretend to people that you're — or anything like that, that would mean that he's the one running the show. I think, Your Honor, that's a very good reason why there should be discovery of Madoff. We know that he said created the fraud. We know that he said responsible for the fraud. We know that he said complicit in the fraud. It would be good, I think, if the Court was looking beyond the question of do we have a good-faith basis. He was asked — he was asked why were they complicit, and he answered, well, because they had violated tax laws based upon what I had discussed with them and other things that I knew they were doing with people in my firm. Yes, Your Honor, but he also said in that same portion of his deposition, I said at the time that the best thing I could do for my clients was to get the money back from the people that were complicit in the crime, namely Pickhower, Shapiro, Levy, and some others, and that he wanted to let these people know that unless they came forward with the money, returned it, and made the investors whole, he could go to the government and have them put in jail. Now, this had nothing to do with the tax scheme. Madoff wasn't saying I want the people responsible to return the money to the IRS. He's saying he wanted the people responsible for the crime to return the money to the investors who were victimized by the crime. That doesn't sound like a tax scheme, respectfully. But I'm still — I'm still — you know, a control person is not someone who is complicit, right? I mean, a control person, this is a technical term of art within the securities laws. Yes. Complicit may be some indication of control, but it is not control itself. Okay. Also, I would say, read in conjunction with the other evidence we had pointed to and read in conjunction with the Madoff declaration and deposition, for example, one of the things that has been pled, and I think no one disputes, is that Pickhower directed Madoff employees to commit fraud in doctor documents on a regular basis. Now, even though that might have been in Madoff's own account, the point is you don't walk into a broker and say, do me a favor, commit fraud in my account, risk going to jail for tax fraud, unless there is some form of control that you have over those employees. And Pickhower did that on a regular basis. Pickhower was also the primary beneficiary of the Madoff fraud. When the smoke cleared, Madoff had a net worth, I believe, of about $125 million, Pickhower something north of $10 billion. You look at that, and I think as a common-sense matter, you say, well, who was running this fraud, Madoff or Pickhower? Why else would Pickhower have gotten such outsized returns? Did Madoff really like Pickhower that much, or, again, was there a control relationship? Well, I thought one of the things that you said was an indicator of the control relationship was that Mr. Madoff said he was a very good friend and I couldn't say no to him. That's correct. So, well, all right. So does that make a control person? If somebody, you know, counsels you to do wrong and you say, gee, I really like this guy, so I'll do it? It's an indicator of control, but I don't think even in that context, when you look at the disparity between what Madoff obtained from the fraud and what Pickhower obtained from the fraud, I think that goes beyond the bounds of friendship. So explain to me why, and maybe I'm taking much too simplistic a view of this, what the trustee did to recover monies from Pickhower essentially wasn't going after him as a control person, whether denominated as such. I don't believe the trustee has standing to bring a control person claim. He went after Pickhower for money. Correct. Whether he has standing or not, he got money from Pickhower. Correct. He got money from Pickhower based on what? Fraudulent conveyance. Fraudulent conveyance. Having a whole bunch of money that wasn't his. Correct. Taken out of his account. How much was that? I believe the amount was $6.2 billion. Why is it that the trustee doesn't have standing to bring a control person claim against Pickhower? Because a control person claim is individual to the investor. It is not a claim that can be brought by the trustee. But you have a whole bunch of investors who are, I'll put them in the category of creditors, who have claims against a bankrupt estate, right? They do. So why isn't the trustee standing in their shoes, whatever their shoes may be, when it's going after Pickhower? He's standing in their shoes for the damage to the estate. Which is comprised in part of the claims that the creditors have. Yes. Right. Some of the creditors are ones who have Section 20 claims. Some of the creditors also have Section 20 claims. Right. So why isn't the trustee standing in the shoes of those creditors and essentially making a deal with Pickhower and extinguishing all the claims that those creditors have? I don't believe the trustee can bring those claims. They are particularized to the investors. But what is particularized? This is the puzzle that I have about this. I think I understand the distinction that you make between being defrauded and the fraudulent conveyance claims, which are essentially taking the view that Pickhower got too much money that he wasn't really entitled to out of this and was aware that Madoff was really insolvent. So, okay. As a result of that, he pays a total of $7-plus billion to the trustee and to the government. What did Pickhower do to your clients specifically that he did not do to all of the creditors collectively, which is essentially to take all this money that you said he got this enormous amount of money out of Madoff, and he did it knowing that Madoff really was insolvent and was not making the profits that, purportedly, he was paying over to Pickhower? He controlled Madoff in making false statements to the investors. That's exactly the point, then. What is the evidence that he somehow got Madoff to make false statements to the investors rather than that Madoff is making false statements to all the investors? Pickhower knows that that's happening and nevertheless collects all the money that Madoff attributes to him. Because Madoff says he created the fraud and was primarily responsible for the fraud. So Madoff's self-serving statement that this is the guy who really should have been gone after and I could have gone to the government and got them all put in jail, which apparently he did not do, is evidence that, in fact, there is a concrete allegation of what Pickhower did to control this, set up the fraud, and make all these false statements happen to your clients. It shows that we have a good-faith basis for the law. Good-faith basis is not enough under Twombly. We are, what, 15 years into a new regime of what you have to put in a complaint to make it plausible. Respectfully, Your Honor, we're not under Twombly. This is not a 12b-6 motion. The standards that ---- You're not under Twombly? You're always under Twombly. Twombly is an interpretation of Rule 8 of the Federal Rules of Civil Procedure, not of any particular provision in the securities laws. Indeed, Twombly was an antitrust case, not a securities case. That's correct. I think what you are referring to is you don't have the heightened, super-heightened pleading standards of Rule 9, which apply to claims of fraud. In doing this, you'd be merging the 12b-6 analysis with the analysis of have you asserted a bona fide A control claim? And the standard for asserting a bona fide A control claim, I think, is different from and lower than the standard for 12b-6. But I would say that rather than ---- 12b-6 doesn't apply to control claims? Oh, no. It absolutely applies to control claims. But the issue before the Court is whether we are asserting a derivative claim or a control claim which would be a non-derivative claim. I see. So what you're saying is there is a lower standard for that determination because it is the court in the district court in Florida that will ultimately decide if this complaint is allowed to go forward, that will decide the 12b-6 issue. What is at issue here is simply whether this claim falls within the injunction against bringing derivative claims. That's correct. And you were saying that even a complaint that does not meet the 12b-6 standard should be allowed nevertheless to go to Florida and make the judge down there decide the 12b-6 issue. If it breaches the standard of a good-faith bona fides control claim, yes. I don't understand why the 12b-6 standard shouldn't be the standard that we adopt to see whether this complaint is one that does or doesn't come within the injunction. I believe you said in Goldman it doesn't. What doesn't? The 12b-6 standard does not apply. This is a separate standard. Because otherwise you take away the what this Court had said in Marshall that perhaps we can articulate a claim that would be a particularized claim to the investors. If the 12b-6 standard applies, then you'd never have a question of is it derivative or non-derivative. You would only have a question of does it state a claim. But is there not a question as to whether it is bona fide, and I take it that means something more than that the plaintiff subjectively believes that it's a control claim. Yes. You have to have something to show that it's not fanciful or frivolous, and I'd submit to you the Madoff declaration does that. Okay. Okay. Thank you. You've reserved three minutes for rebuttal, Mr. Gotthoffer. Thank you, sir. Mr. Stein or who's arguing? Ms. VanderWaal. Ms. VanderWaal. And Mr. Stein is arguing as well? Yes. All right. Good morning. May it please the Court. We now have a dozen decisions from courts in this circuit examining this injunction and looking at attempts to plead around it by these plaintiffs and the Goldman plaintiffs. I agree with Mr. Gotthoffer that these decisions plus Goldman III, the most recent decision from this Court, essentially resolve the issues before you today. Once again, the claims in this complaint continue to be derivative. The vast majority of the allegations contained therein have been considered and rejected in prior iterations. Mr. Gotthoffer suggests that they should be looked at differently this time around, that the context is different this time around, but it's simply not true. Five of the six prior complaints were control person complaints. They had the same allegations of activities in Pickauer's account. And time and time again, courts have found that those allegations are not sufficient to establish control person liability. Mr. Pickauer was a customer. He took out a lot of money, and he harmed all creditors the same way. The injury was derivative. The claims remain derivative. So the only two new issues on appeal are the declaration and the deposition. And Mr. Stein is going to discuss those specific allegations in terms of the control person elements. But just in brief, these allegations do not transform the appellant's allegations into control person claims. The activities, again, are focused on things that occurred in his account. On the standard, the appropriate standard for review, we agree that, you know, this below have stated that it's not exactly a 12b-6 analysis. What courts do is they look. We know from Tronex that we look behind the label that are placed on the claims to see if there's really something there. We can consider the factual context. We can consider what appellants say they relied upon in crafting these allegations, and that's exactly what the Bankruptcy Court and district court did here. Sotomayor's 12b-6 plus almost. A little bit. So the concept of a colorable claim seems a little bit less. You know, it's not necessarily legal sufficiency. But what the Bankruptcy Court can look at in reaching that determination that these claims are colorable and that these are not simply yet another attempt to plead around the injunction is a little bit more. Also, just briefly. Without telling me, because I do know that those aren't the facts of this case, what would a viable claim look like here? A viable control person claim? Yeah. Well, when you look to the cases, and I know that Mr. Sina is going to touch on this, there's just simply more there. They are majority owners of the company. They are the people that the defendants are officers. They are directors. They have a contractual arrangement that allows them to control the operations of the company. There's simply more there than they took out a lot of money from their account. Well, I mean, it can be other things, can't it? It doesn't have to be based on contract. Can't it simply be based on influence over the person? If somebody simply, by reason of family or any kind of relationship, has influence over the persons who make the decisions for the company and exercises that influence with respect to the making of those decisions, that does it too, doesn't it? There are certainly cases that talk about family relationships, but the control is then personified by an ability to influence the day-to-day management and policies of the company. And we simply don't see that here. We simply don't see any allegations, any non-conclusory allegations that Pickhower did something. You're saying that if the alleged control person influences major policies of the company but doesn't get involved in the salaries of personnel of the company and day-to-day stuff like that, you're saying they're not a control person even though they effectively direct the decisions on important policy matters? I didn't intend to make that distinction. I'm saying that they have to be just sort of control over the company, over its decision-making. Well, I'm saying what if they don't exercise control over day-to-day insignificant things, but they do exercise control over not day-to-day major policy matters? That's control also, isn't it? It potentially could be. But, again, that's not what we have here. We have no non-conclusory allegations that connect the activities in Mr. Pickhower's account, the backdating, the margin loans, to anything that Bernie Madoff was telling his customers. Okay? Thank you very much. Thanks, Ms. VanderWaal. Excuse me. Mr. Stein. May it please the Court. The Fox 3 complaint suffers from the same defect as the Fox 2 complaint and the Goldman 3 complaint. Namely, it fails to set forth even a colorful control person claim. Indeed, as to the vast majority of the allegations in the Fox 3 complaint, the immortal words of Yogi Berra apply. It's déjà vu all over again. They're literally the same allegations that were made and rejected in Fox 2 and Goldman 3 as impermissible attempts to plead around the permanent injunction. And it's also déjà vu all over again in terms of what the Fox 3 complaint does not say. There's no allegation of any of the traditional indicia of control. No allegation that Pickhower had any position as an officer or director. No allegation he held any stock or held any ownership interest in BLMIS. No allegation about rights to buy contract to control. And perhaps most importantly, no allegation that he either made or participated in making any misrepresentation to plaintiffs or any other BLMIS investor, or even more to the point, as I think your questioning elicited, Judge Lentz, no allegation that he directed Madoff, that he told Madoff, to make any misrepresentation. And the little that is here doesn't come close to a genuine control person claim, which this has to be, to get past the permanent injunction. Let's talk about the claim that Madoff said at his deposition that Pickhower was complicit in the fraud. It's not a genuine allegation of control for two reasons. First, it's just a flat misstatement of the actual testimony, as the judges below concluded. Madoff was asked, why do you say he was, not just he, but all the big foreign investors were complicit, and he said it was because they had violated tax laws based upon two things. One, what he discussed with them, and two, other things he knew they were doing with other people in my firm. He didn't say, as plaintiffs claim, that the foreign investors violated tax laws and other things that violated other laws. There's another Yogi Berra-ism that I think comes to mind here, which is you can observe a lot by just watching, and you can also observe a lot by just reading. And what the judges below did is they read the actual transcripts, and they determined that the plaintiffs were misstating it. It's also true with regard to the characterization of Madoff's deposition testimony that he carried out the fraud at Pickhower's behest and direction. And Madoff simply never testified to any such thing. It's all laid out in our brief. I won't belabor the point, but if you read the testimony, Madoff testified that he decided to take over the short option positions, these hedges of the big foreign investors, not that Pickhower directed him to. He testified that he, Madoff, decided to get the hedge funds to invest to cover his losses, not Pickhower's losses, his losses on those option positions, not that Pickhower directed him to. And most critically, he testified that he decided to begin falsifying trade confirmations to the hedge fund investors, not that Pickhower directed him or even knew about it. Then we get to Mr. Madoff's declaration. Again, the judges below were entirely correct in saying that those statements were entirely conclusory and also don't give rise to a colorable controlled person claim. Let's not forget that this declaration was drafted by plaintiff's counsel at a time when they were litigating the sufficiency of the Fox 3 complaint. These were things that were stuck in completely gratuitously to a declaration submitted for other purposes. It has no detail, no supporting facts. And what he says is, post-1990, I was put under enormous financial pressure by Jeffrey Pickhower, who created the fraud I perpetrated. When you read that with the deposition transcript, there is an explanation. What he's saying is that Pickhower put him under financial pressure, which is what he talked about in the deposition, and as a result of that, he began the fraud. But being a but-for cause --" Kennedy, saying it's all Pickhower's fault because Pickhower created the conditions that led Madoff to engage in this fraud is at least one reasonable reading. Honestly, I think it's the only reasonable reading, Your Honor. And obviously, being a but-for cause of a fraud isn't a genuine control person allegation. If he had only said Pickhower created the fraud, I mean, you're saying that after saying Pickhower created the fraud, he was then asked and was complicit, he was then asked how, and then he answered with because they violated the tax laws and based upon what I discussed with them and other things that I knew they were doing. But if he had only said that, was the word created? Created. Created the fraud. It was put under financial pressure by Jeffrey Pickhower, who created the fraud. Who created the fraud. So why doesn't don't the words he created the fraud, why doesn't that make the claim colorable? Two reasons. Number one, it's completely conclusory, as the judges below concluded. That wouldn't be enough to survive anything. But secondly, we do have context within which to read that conclusory and gratuitous statement. Kennedy. Madoff narrowed it by what he later said in explanation of what he meant. That's what Judges Bernstein and Broderick both concluded, and they were right to do so. Well, both by what he did say and also by what he did not say. That is to say, he did not elaborate on what he meant by create other than the account he gave of the financial situation and the account he gave of what he himself decided to do in response to that situation. That's right, Your Honor. So in summary, this is just another contrived attempt to plead around the permanent injunction by slapping the label of a controlled person claim on allegations that aren't actually controlled person allegations, and to allow plaintiffs to proceed with this complaint would deprive my clients, the Pickauer parties, of a critical element of what they bargained for when they entered into their historic settlement with the Madoff trustee. The bankruptcy judge exercising his gatekeeping function properly enforced the permanent injunction here, and we ask that that decision be affirmed. Is it correct, as Mr. Gonehopper said, that the trustee doesn't have standing to bring a controlled person claim? In all honesty, I feel I should leave that to my colleagues, because that's sort of their turf. But certainly there are individualized, particularized claims that would belong to actual creditors and be outside the scope of the trustee's powers. For example, in J.P. Morgan, this Court allowed or ruled that the trustee did not have as part of the property of the estate the right to bring certain claims that had fraud claims that had been asserted against J.P. Morgan. That case was distinguished in Goldman III and is not applicable here. But I'm sorry for going on. I probably should have just deferred to the folks from Baker. Thank you. Mr. Gonehopper. Thank you, Your Honors. One thing just on the timing of events, the deposition preceded the declaration. So the testimony in the deposition wasn't directed to clarifying what Madoff meant when he said, Pickhower created the fraud. And the fact is, we can argue over what we think he meant, but I don't think that's the best way to resolve a case of this kind, given that Madoff did say, Pickhower created the fraud and had the primary responsibility for the fraud of anyone but himself. The logical course, particularly if we're in the context of an injunction, is to have Madoff testify at a deposition. Well, you see, there's where you're invoking the 12b-6 standard, aren't you? Because you won't get that unless you get past 12b-6. So if you are the one who is saying, we should make sure there's discovery, what you're effectively saying is that there should be some analysis of whether this is a complaint that's even going to get you any discovery. I think there should be some analysis as to whether the claim has a good-faith basis in fact. I think it's more analogous to a Rule 11 than a Rule 12 type of an inquiry, because especially in this context, if you find that the complaint states a colorable or bona fide controlled person claim, the question goes to Florida as to whether that claim is sustainable. If it's going to be a decision made upon what Madoff meant when he said complicit or what Madoff meant. So the question is not whether the fairest way to resolve this is to get discovery. The question that you are really asking is, is the fairest way to do this, to send it to a judge in Florida to decide whether the 12b-6 standard is met? Yes. Right. Doesn't that create just, think of the downstream policy of all of this. Somebody walks in here who has some participation in a bankruptcy or potential participation in a bankruptcy proceeding. The bankruptcy proceeding has gone forward. It has restrained further claims. And all you have to do is come in. You're saying, and I'm not suggesting you're doing this, but I will use the worst case scenario, gin up some claim not compliant with Iqbal and Twombly's pleading standards and say, this states a way to get to this other court. Now let us go down there and they'll sort it out. Why shouldn't we, in the course of our analysis, as the bankruptcy judge did and as the district court did, analyze that and say, no, it doesn't make it? Your Honor, we should analyze it, but we should analyze it from a different perspective and for a different purpose. If the claim is a claim sounding in control person liability, then we have standing to bring it. If the claim is a disguised fraudulent conveyance claim, and in other contexts you do this all the time, somebody sues for breach of fiduciary duty against a lawyer because he's trying to avoid a short malpractice statute of limitations, and you look at it and you say, look, is the gravamen of this claim breach of fiduciary duty, or is the gravamen of the claim malpractice? Because if it's malpractice, we're going to apply the shorter statute. I think you look here to discern the gravamen of the claim, but once you've discerned that there is a – an effort, if you will, to assert a control person claim and there is something that supports it, it is not simply ginned up out of plaintiff's counsel's imagination, that's when you say send it to Florida for the rest of the proceedings. Subject to questions from the Court. Nothing further. Thank you, Mr. Adhofer. Thank you, Your Honors. Thank you all. We'll reserve decision in this case.